

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-2003

# Mikhail v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4515

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Mikhail v. Atty Gen USA" (2003). *2003 Decisions.* Paper 202.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/202

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**


UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 02-4515


RENEE LABIB MIKHAIL;
MARINA ABDEL SHAHID,

Petitioners

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,

Respondent


On Petition for Review from an Order of the
Board of Immigration Appeals
(D.C. No. 0090-1: A76-154-679;
D.C. No. 0090-1: A76-154-680)


Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2003

BEFORE: MC KEE, SMITH and COWEN, Circuit Judges

(Filed : October 16, 2003)


OPINION

COWEN, Circuit Judge.

Renee Labib Mikhail petitions for review of a final order of removal entered by the Board of Immigration Appeals. Mikhail argues that the evidence before the Immigration Judge (the "IJ") supported her request for asylum. We conclude that the record contains substantial evidence supporting the IJ's finding that Mikhail failed to demonstrate past persecution or a well-founded fear of future persecution. Because Mikhail did not satisfy her burden of establishing eligibility for asylum, we must affirm the decision of the IJ, and deny her petition for review.

## I.

Mikhail is a native and citizen of Egypt who entered the United States on August 24, 1999 with her daughter, Marina Abdel Shahid. Mikhail and her daughter did not possess valid visas or entry documents, and were charged by the former Immigration and Naturalization Service as removable aliens under §§ 212(a)(7)(A)(i)(I) and 212(a)(4)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(7)(A)(i)(I); (a)(4)(A) (2000) (the "INA"). On January 28, 2000 Mikhail and her daughter appeared at a hearing, and conceded removability as charged. On April 4, 2000, Mikhail filed an application for asylum, withholding of removal, and protection under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment.[1] In her applications, Mikhail claimed that she was persecuted by both the

---

[1] Marina Abdel Shahid did not file an application for asylum or protection, and no application was filed on her behalf. The IJ therefore concluded that Marina had

2

Egyptian government and local Muslim groups on account of her Christian faith. Mikhail cited four separate incidents of harassment that she attributed to her religious beliefs. First, in 1994, three individuals attacked her, stripped a cross from her neck, and demanded that she dress in veiled clothing. Second, in 1996, a group of Muslims doused her clothing with acid. Third, in 1999, two Muslims threatened to kidnap her and later set fire to her car. Finally, in l999, Mikhail claimed that a group of Muslims threatened to kill her brother, and later set fire to her brother's apartment. An Immigration Judge conducted hearings on Mikhail's applications in November 2000.

Mikhail testified at the hearing in support of her applications. Mikhail testified that she first arrived in the United States in 1997 under a tourist visa, but admitted that she intended to stay in the country indefinitely. Mikhail also testified that despite her stated fears of reprisal, she returned to Egypt on two occasions, once with her children.

Mikhail also explained the attacks she described in her applications. Mikhail first discussed the 1994 incident involving the theft of her cross, but recalled that "it wasn't such a big deal." Mikhail also discussed the 1996 attack where three individuals splashed her with kerosene, but acknowledged that she did not seek medical attention. Mikhail also testified that she did not report either attack to the authorities.

Mikhail then explained that in 1999 the same individuals that had attacked her set fire to her car, and speculated that the arson was related to her religious beliefs. Mikhail

_____

abandoned her opposition to removal, and considered only Mikhail's applications.

testified that unlike the assaults occurring in 1994 and 1996, her family reported this incident to the police. Additionally, Mikhail alleged that in 1998 a separate group of individuals that she believed were Islamic militants attempted to rape her. Finally, Mikhail testified that local Muslims harassed and extorted money from her brother, and later set fire to her father's home.

Dr. Damon Delston, a licensed psychiatrist, testified on Mikhail's behalf. Dr. Delston testified that he examined Mikhail, and concluded that she demonstrated symptoms of post-traumatic stress disorder. Dr. Delston based his opinion on Mikhail's detached emotional state, and the gaps in her recollection. Dr. Delston explained that he was not familiar with asylum applications, and did not consider any potential cultural differences in the demeanor of trauma victims. Finally, Dr. Delston acknowledged that he had not followed up with Mikhail after his examination to evaluate her condition, or course of treatment.

Following these hearings, the IJ issued a written decision denying Mikhail's applications on December 8, 2000. Mikhail timely appealed the decision to the Board of Immigration Appeals, which affirmed the IJ's decision without opinion on November 22, 2002. This timely petition followed, and we have jurisdiction pursuant to 8 U.S.C. § 1252.

4

**II**.

A decision of the Board of Immigration Appeals that an applicant is ineligible for asylum is a final order of removal subject to judicial review. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). Where, as here, the Board summarily affirms the IJ's decision without opinion, we limit our review to the IJ's findings. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 591 (3d Cir. 2003); *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002). Our review is exceedingly narrow, and subject to the deferential substantial evidence standard. *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). Substantial evidence denotes "more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. We must therefore uphold the IJ's determination "unless the evidence not only supports a contrary conclusion, but compels it." *Id*. at 484; *see also Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir. 2003). Mikhail has not appealed the IJ's denial of her applications for withholding of removal and protection against the Convention Against Torture. We thus consider only the IJ's determination that Mikhail failed to establish her eligibility for asylum.

Sections 1158(a)(1) and (b)(1) of the INA allow removable aliens to seek asylum as refugees. *Abdulrahman*, 330 F.3d at 591. The INA defines a refugee as:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to avail himself or herself of the protection of [] that country

5

because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). To establish eligibility for asylum under this provision, the applicant must thus show "1) an incident, or incidents, that rise to the level of persecution; 2) that is 'on account' of one of the statutorily-protected grounds; and 3) is committed by the government or forces the government is either 'unable or unwilling to control.'" *Abdulrahman*, 330 F.3d at 592 (quoting *Gao*, 299 F.3d at 272). A showing of past persecution "raises a presumption of a well-founded fear of future persecution." *Id*. Without sufficient evidence of past persecution, the applicant may demonstrate a relevant future fear "by showing that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country." *Id*.

In addition, we have explained that the applicant must demonstrate both a subjectively genuine fear and an objectively reasonable possibility of persecution. *Zubeda*, 333 F.3d at 469; *Abdulrahman*, 330 F.3d at 592. The applicant may satisfy this burden through credible testimony. *Abdulrahman*, 330 F.3d at 592. We review the credibility findings of the IJ under the substantial evidence standard, and will not disturb those conclusions if "supported by reasonable, substantial and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998). We will also defer to the inferences drawn by the IJ, unless those conclusions "are not reasonably grounded in the record as a whole." *Id*. at 162.

6

## III.

The IJ found that Mikhail's explanation of the trauma she endured in Egypt was not credible. Having reviewed the record, we conclude that substantial evidence supports the IJ's determination. Mikhail did not disclose the alleged sexual assault on her asylum application, and did not explain the cultural factors that prevented her from filing a complete statement. Moreover, Mikhail could not explain why she was later able to discuss the alleged assault at her hearing, along with other events of an equally personal and serious magnitude.

Similarly, it was reasonable for the IJ to question Mikhail's rationale for not reporting any of the alleged assaults to the local police. Mikhail offered no explanation for why she chose to report the burning of her car rather than the more serious incidents of assault and rape, given that she claimed both were motivated by religious persecution. These alleged assaults form the heart of Mikhail's application, and the inconsistency of her actions is a legitimate ground for questioning her credibility.

The record also supports the IJ's determination that Mikhail's testimony lacked candor. When challenged as to whether she was pretending to cry during her hearing, Mikhail stated that she suffered from an eye condition. However, Mikhail offered no evidence to support this claim, and indeed contradicted her testimony by crying later. In addition, the IJ noted that despite Mikhail's fears of persecution, she twice returned to Egypt, bringing her young children on at least one of the trips. Mikhail also admitted

7

traveling to England in 1996, without seeking asylum in that country. Mikhail's repeated willingness to return to her home is substantial evidence supporting the IJ's credibility determination.

Mikhail also offered no evidence that the hostility she encountered was orchestrated by the Egyptian government, or a group that the government is unable to control. Mikhail repeatedly declined to contact authorities about the attacks that she cites as evidence of persecution, and thus has not demonstrated a pervasive lawlessness that threatens her safe return. *Gao*, 299 F.3d at 272. Finally, Mikhail offered no evidence beyond her discredited testimony that she was attacked because of her religious beliefs. While the alleged assaults described by Mikhail are offensive, they are equally consistent with "random street violence, motivated not by animosity against a particular . . . group, but rather by arbitrary hostility or by a desire to reap financial rewards." *Abdille*, 242 F.3d at 494.

Mikhail therefore failed to demonstrate either a credible subjective fear or an objectively reasonable possibility of persecution on account of one of the statutorily-protected grounds. Given this substantial evidence supporting the IJ's determinations, we must uphold the IJ's decision to deny Mikhail's asylum application. *Zubeda*, 333 F.3d at 471.

**IV.**

For the foregoing reasons, the petition for review will be denied.

_/s/ Robert E. Cowen_
United States Circuit Judge